## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM, | CRIMINAL CASE NO. **CF0164-22** |
| vs. | **DECISION AND ORDER** |
| **MARK ANTHONY JUNDARINO NALICAT aka Cheesebread,** | |
| Defendant. | |

### INTRODUCTION

This matter is before the Honorable Vernon P. Perez on Defendant **MARK ANTHONY JUNDARINO NALICAT aka Cheesebread's** ("Defendant") Motion to Dismiss Indictment filed February 5, 2024 and Motion to Dismiss Indictment filed March 28, 2024. Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order.

### BACKGROUND

Defendant is charged with one count of Aggravated Assault (As a Third Degree Felony). (Indictment, Apr. 7, 2022). This charge stems from allegations that Defendant assaulted J.P. on or about February 10, 2021 at the Dededo Skate Park. (Decl. of Jeremiah B. Luther, Magistrate's Compl., Mar. 19, 2022). J.P. told responding officers that Defendant punched, kicked, stomped, and hit him on the head with a skateboard. *Id.* J.P. was observed to be in "serious pain" and had "large swelling and redness to the forehead and temple area, redness on his right neck, redness

and scratches to both forearms and elbow, purple bruising to his right bicep, redness and swelling to his lower and upper back." *Id.* Defendant was indicted by a grand jury on April 7, 2022.

On February 5, 2024, Defendant filed a Motion to Dismiss Indictment along with a Declaration of Jehan'ad Martinez in support of the motion. On February 16, 2024, the People of Guam ("the Government") filed their Opposition. On March 12, 2024, the Court heard arguments on the Motion and placed the matter under advisement.[1]

Subsequently, on March 28, 2024, Defendant filed a second Motion to Dismiss Indictment along with a Declaration of Richard L. Johnson in support of the Motion. On April 5, 2024, the Government filed its Opposition and on April 12, 2024, Defendant filed his Reply. On April 29, 2024, the Court heard arguments on the Motion and placed the matter under advisement as well.[2] Both Motions to Dismiss allege errors by the prosecuting attorney during the grand jury proceedings in this matter on April 7, 2022.

## DISCUSSION

Under Guam law, "[a]ny felony together with any related misdemeanor shall be prosecuted by indictment…" 8 G.C.A. § 1.15. "A grand jury's chief duty is to determine whether the prosecution has established a prima facie case that a crime has been committed and that the accused committed it. Further, a grand jury serves a gatekeeping function by considering the sufficiency of the evidence to support an indictment." *People v. San Nicolas,* 2013 Guam 21 ¶ 11 (internal citations and quotation marks omitted). "The indictment serves two essential purposes: it affirms that the grand jury found probable cause for the charges in the indictment, and it gives the defendant notice of the charges." *Id.* at ¶ 12. "The key to ensuring that the grand jury system works as it should is to ensure that the grand jury has indicted based on a finding of probable cause for the 'offense charged.'" *Id.* at ¶ 21 (citation omitted). "The grand jury shall receive only competent evidence but the fact that evidence which is incompetent was received by

---

[1] Present at this hearing were Defendant with counsel, Richard L. Johnson, and Assistant Attorney General Sean E. Brown on behalf of the People of Guam.

[2] Present at this hearing were Defendant with counsel, Richard L. Johnson, and Assistant Attorney General Charles Carsey on behalf of the People of Guam.

the grand jury does not render the indictment void where sufficient competent evidence to support the evidence was received by the grand jury." 8 G.C.A. § 50.42.

On April 7, 2022, the grand jury returned an Indictment against Defendant, finding probable cause for the following:

> On or about February 9, 2021 in Guam, MARK ANTHONY JUNDARINO NALICAT (aka Cheesebread) did commit the offense of *Aggravated Assault (As a 3rd Degree Felony)*, in that he did recklessly cause or attempt to cause serious bodily injury to another, that is, *J.P. (DOB: 08/28/1993),* in violation of 9 GCA §§ 19.20(a)(2) and (b).

(Indictment, Apr. 7, 2022).

## I. First Motion to Dismiss (February 5, 2024)

Defendant first moves the Court to dismiss the Indictment because the prosecuting attorney improperly presented evidence that was obtained after Defendant asserted his right to remain silent to the grand jury. *See generally*, Mot. Dismiss, Feb. 5, 2024. At issue is the following testimony elicited during the grand jury proceedings:

> AAG: How about the witness statements that were made to the police and the injures – did he acknowledge?
>
> W: He denied and stated that he had nothing else to say.
>
> AAG: Was there any other questions? Did Officer Pewtress ask him about any martial arts training?
>
> W: When asked if he trained in any martial arts, he indicated that he trained in Muay Thai.
>
> AAG: At that point did Officer Pewtress place him under arrest?
>
> W: Yes, sir.
>
> AAG: Did he make any other statements after that?
>
> W: He remarked that he was set up and that [JP] often talks a lot of shit.
>
> AAG: Thank you. Do any of the jurors have any additional questions for our witness. If there are no additional questions then can we excuse him at this time.

(Digital Recording at 12:07:00 to 12:08:10, Apr. 7, 2022). Defendant argues that the inclusion of the "unnecessary discussion of Muay Thai . . . served only to prejudice the grand jury, a practice

prohibited by both the U.S. Constitution and Guam's Bill of Rights." (Mot. Dismiss at 4, Feb. 5, 2024). The Government opposes, arguing that the grand jury received competent evidence to render its true bill. *See generally*, Opp'n, Feb. 16, 2024. The Government does acknowledge, however, that it would not be able to use such statements at trial if they were made after a refusal to talk. *Id.* at 2.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The "Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615 (1965).

"It is well recognized that the remedy of dismissal of an indictment on grounds of prosecutorial misconduct is an extraordinary one." *United States v. Soberon*, 929 F.2d 935, 939 (3d Cir. 1991) (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988)). An indictment may only be dismissed based on prosecutorial misconduct if it is "shown that [such] conduct significantly infringed on the ability of the grand jury to exercise independent judgment." *United States v. Cederquist*, 641 F.2d 1347, 1353 (9th Cir. 1981) (citations omitted). The Court does not find that the Government's elicitation from the witness of Defendant's martial arts after he stated he had nothing else to say significantly infringed on the grand jury's ability to exercise independent judgment. *See, e.g., United States v. Edmonson*, 962 F.2d 1535, 1539 (10th Cir. 1992) (finding that the prosecutor's comment before the grand jury regarding defendant's refusal to communicate with law enforcement officers after being advised of his *Miranda* rights did not prevent the grand jury from exercising independent judgment concerning the indictment).

"The grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted . . . on the basis of information obtained in violation of a defendant's Fifth Amendment privilege against self-incrimination." *United States v. Calandra*, 414 U.S. 338, 344–45 (1974). "[A]lthough the grand

jury may not force a witness to answer questions in violation of the Fifth Amendment's constitutional guarantee against self-incrimination, our cases suggest that an indictment obtained through the use of evidence previously obtained in violation of the privilege against self-incrimination is nevertheless valid." *United States v. Williams,* 504 U.S. 36, 49 (1992) (citations omitted). "[T]he exclusion of unwarned statements [at a criminal trial] is a complete and sufficient remedy for any perceived *Miranda* violation." *United States v. Patane,* 542 U.S. 630, 643 (2004) (quoting *Chavez v. Martinez,* 538 U.S. 760, 790 (2003)). Accordingly, the Court does not find a basis to grant Defendant's First Motion to Dismiss. Should this matter proceed to trial, any statements made by Defendant in violation of his *Miranda* rights may be suppressed. The Court therefore DENIES the Motion to Dismiss.

**II. Second Motion to Dismiss (March 28, 2024)**

Defendant next moves the Court to dismiss the Indictment because the prosecuting attorney did not present exculpatory evidence to the grand jury, in violation of 8 G.C.A. § 50.46. *See generally,* Mot. Dismiss, Mar. 28, 2024. The Government opposes, arguing that (1) "the charge could be proven by the attempt to cause serious bodily injury and serious bodily injury does not have to actually occur"; (2) the injuries described by the prosecutor at the Grand Jury proceeding were sufficient to prove serious bodily injury and a description of other lesser injuries is not exculpatory"; and (3) "a description of other lesser injuries is not exculpatory." (Opp'n at 1, Apr. 5, 2024).

Guam law provides that:

> The grand jury shall receive only evidence presented to it by the prosecuting attorney but the prosecuting attorney shall submit any evidence in his possession which would tend to negate guilt and the grand jury shall weigh all the evidence submitted.

8 G.C.A. § 50.46. Section 50.46 was based on proposed section 9299 of the California Criminal Procedure Code. *See* 8 G.C.A. § 50.46, Note. In California, the "prosecutor is obligated pursuant to Cal. Penal Code § 939.7 to give to the grand jury exculpatory evidence as well as incriminating evidence due to the peculiarly unilateral role of a prosecutor in the nonadversary context of grand

jury proceedings."[3] *People v. Sablan,* 1986 WL 68900 *3 (D. Guam App. Div. Oct. 24, 1986) (citing *Johnson v. Superior Court,* 124 Cal.Rptr. 32 (Cal. 1975)).

Defendant argues that the prosecuting attorney had the following exculpatory evidence in his possession, which was not presented to the grand jury: photographs taken on February 10, 2021 of the victim, J.P., hours after the alleged assault, and statements he made the same day to Officer Tagawa regarding his visit to GMH. (Mot. Dismiss at 2). Defendant argues that the photos and statements negate the Government's assertion that J.P. suffered serious bodily injuries. *Id.*

**A. Photographs**

The Court first turns to Defendant's argument that the photographs of the alleged victim's injuries negate that the victim suffered serious bodily injuries. At least sixty-three (63) photographs[4] were taken of the alleged victim hours after the incident. (Decl. of Richard L. Johnson, Mar. 28, 2024; Ex. A). There is no dispute that these photographs were not presented to the grand jury. The Government simply sets forth that "there is no requirement that the photos be given to the Grand Jury. The fact that Defendant caused minor injuries to the Victim does not do away with the Defendant attempting to cause serious bodily injury to the Victim but failing and only causing less serious injuries." (Opp'n at 2).

Defendant is charged with aggravated assault in that he either did "recklessly cause *or* attempt to cause serious bodily injury to another." (Indictment, Apr. 7, 2022). Thus, any evidence that would negate guilt for either attempting to cause *or* recklessly causing serious bodily injury must be presented to the grand jury,[5] should the prosecuting attorney have such evidence in his

---

[3] In California, "[t]he grand jury is not required to hear evidence for the defendant, but it shall weigh all the evidence submitted to it, and when it has reason to believe that other evidence within its reach will explain away the charge, it shall order the evidence to be produced, and for that purpose may require the district attorney to issue process for the witnesses." Cal. Penal Code § 939.7.

[4] According to Attorney Johnson's Declaration, sixty-five (65) photographs were referenced in GPD Police Reports in this matter. (Johnson Decl. ¶ 4, Mar. 28, 2024). Sixty-three (63) photos were turned over as part of discovery. *Id.*

[5] The Court notes that Defendant's Reply also argues that "[a] single charge needs to allege a single crime. The government's argument appears to be that the indictment is duplicitous and that somehow saves it. Not so." (Reply at 2). The Court does not find that the offense of aggravated assault, as charged in the Indictment, is duplicitous.

*People v. Nalicat*
Case No. CF0164-22
Decision and Order

or her possession. The Court does not find that the photographs on their own necessarily negate Defendant's guilt. The photographs show dark bruising on the victim's arm along with other scratches, marks and scabs on the victim's face, arm, neck, and back. The photographs may speak to the severity of the injuries but would not negate guilt for *either* attempting to cause or recklessly causing serious bodily injury. Accordingly, the Court finds no basis to grant Defendant's Motion on this ground.

### B. Statements by Defendant

Next, the Court turns to Defendant's argument that the alleged victim made several statements to GPD which negate Defendant's guilt and were not presented to the grand jury. The Government sets forth that the "description desired by Defendant was essentially provided to the Grand Jury. The following quotes, appear to the People, to satisfy the request of Defense[:] Holding temple area; Heard moaning in pain; Officer Togawa observes large swelling and redness on [JP]'s forehead and temple area; Officer Togawa observes Redness on his right neck area, redness and scratches on both forearms; Officer Togawa overheard the Victim tell medics that he was in pain and that his lower back is the most pain right now; difficult time driving because his whole body was hurting." (Opp'n at 1-2 (digital recording time stamps omitted)).

---

Guam's aggravated assault statute provides that "[a] person is guilty of aggravated assault if he either recklessly causes or attempts to cause" bodily injury in one of three ways: "(1) serious bodily injury to another in circumstances manifesting extreme indifference to the value of human life; (2) serious bodily injury to another; (3) bodily injury to another with a deadly weapon." 9 GCA § 19.20(a). Thus, a person may commit the offense of aggravated assault in one of three means.

The Supreme Court of Guam has adopted the principle that "conjunctive pleading is not strictly necessary where a statute is written disjunctively, because the government may prove its case disjunctively." *People v. Torres,* 2014 Guam 8 ¶¶ 52–53 (citations omitted). The charge as set forth in the Indictment uses the same language found in 9 G.C.A. § 19.20(a). Defendant is charged with committing aggravated assault against J.P. under 9 G.C.A. § 19.20(a)(2) ("recklessly causing or attempting to cause serious bodily injury to another"). Further, the disjunctive pleading is in reference to two mental states – either recklessly causing or attempting to cause – which the Supreme Court of Guam has also found does not render the charge uncertain. *See People v. Diaz,* 2007 Guam 3 ¶¶ 20-21 ("the use of the disjunctive conjunction 'or' in setting apart the differing mental states did not render the charge uncertain"). Defendant is charged with one act of assaulting the victim.

Although the prosecutor had the witness read verbatim from most of the police report, the following extract was not read to the grand jury:[6]

> Medic 4 strongly advised [J.P.] to go to the hospital for further evaluation due to the extent of his injuries. [J.P.] acknowledged, however refused to be transported saying "I ain't got money for the bills." [J.P.] said that he will go to the hospital but he will drive there on his own. I advised [J.P.] to just ride with the Medics because of his injuries which he stated "it's okay par. I was able to drive here. I can drive to GMH."
>
> * * *
>
> I asked [J.P.] what was the outcome of the hospital which he stated that he was COVID tested, X-rayed and scanned. [J.P.] stated that according to the Doctor (name not remembered), he has no internal or serious injuries aside from being bruised up. [J.P.] stated that they prescribed him some pills and discharged him from the ER around 4:00am today.

(Johnson Decl. ¶ 6, Mar. 28, 2024; Ex. B).

The Court does not find that the first paragraph regarding J.P.'s ability to drive necessarily negates Defendant's guilt. The Court does find, however, that J.P.'s statement regarding his visit with the doctor that he had no internal or serious injuries aside from being bruised up and that he was prescribed some pills and discharged from the ER after a few hours[7] may negate Defendant's guilt given the single charge of aggravated assault.[8] This statement was in the possession of the prosecutor and was not presented to the grand jury.

---

[6] The Court's review of the grand jury proceeding in comparison with the police report also indicates that a paragraph about the alleged victim's injuries was not read to the grand jury. This paragraph, however, does not negate the guilt of the Defendant as it refers to the victim moaning in pain; the observations of purple bruising on the victim's right bicep; redness and swelling to the victim's upper and lower back area; and the victim telling the officer that he was face down trying to cover his head while being jumped.

[7] The grand jury heard that Officer Togawa first met with J.P. that morning around 1:20 a.m. (Digital Recording at 11:45:03, Apr. 2, 2022).

[8] Defendant is charged with recklessly causing or attempting to cause serious bodily injury. Serious bodily injury is defined as "bodily injury which creates: serious permanent disfigurement; a substantial risk of death or serious, permanent disfigurement, severe or intense physical pain; or protracted loss or impairment of consciousness or of the function of any bodily member or organ." 9 G.C.A. § 16.10(c). Bodily injury "means physical pain, illness, unconsciousness or any impairment of physical condition." 9 G.C.A. § 16.10(b).

[T]he court must decide whether the record reflects a probability that a properly informed grand jury would not have found probable cause to indict; i.e., whether the grand jury would not have found a strong suspicion of guilt. This analysis requires a consideration of the relative strengths and weaknesses of the evidence supporting the probable cause finding necessary to indict and the undisclosed exculpatory evidence.

*Berardi v. Superior Ct.*, 57 Cal. Rptr. 3d 170, 183 (Cal. App. 2007) (citation omitted). "[I]rregularities at grand jury proceedings should be closely scrutinized because protection of the defendant's rights is entirely under the control of the prosecution without participation by the defense." *Id.* at 184. However, "not all cases involving some deficiency in disclosure and interference with the grand jury's independence will support dismissal." *Id.* "[T]he court must evaluate the record as a whole, taking into consideration all relevant factors" which "include the strength and nature of both the undisclosed exculpatory evidence and the probable cause evidence that was presented." *Id.* "[T]he fact that the record can support a finding of probable cause does not mean there is no reasonable probability the jury would have rejected such a finding," *id.* at 185-86, should the grand jury have heard the additional statements regarding J.P.'s visit to GMH. *See, e.g., People v. Ramey*, 2019 Guam 11 ¶¶ 21-22 (finding a rational juror could have concluded that the victim did not suffer serious bodily injury when there was evidence showing that the victim was at the hospital for only three hours; that he was given over-the-counter drugs as pain medication; that he was conscious and alert, answering all the questions; a little upset; that he complained of pain to his head, had an abrasion on the side of his head with some welling and minor bleeding). Accordingly, the Court finds that Defendant was prejudiced by the failure of the prosecutor in presenting the statements to the grand jury. Should the Government seek to continue to prosecute this matter, it must present the statements to the grand jury within twenty (20) days of the issuance of this Decision and Order. The Court will dismiss this matter if no superseding indictment is filed within this time frame.

//

//

//

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Motion to Dismiss filed February 5, 2024 and GRANTS IN PART Defendant's Motion to Dismiss filed March 28, 2024.

**IT IS SO ORDERED** this 3RD day of July, 2024.

_____
HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam